UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FREDERICK DeLEON,

                 Plaintiff,

      - against -

ROCKLAND COUNTY CORRECTIONAL
FACILITY, SGT. WITT, SEARGEANT
GINTILLA, AND LIEUTENANT SCURTI,

             Defendants.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 22, 2013

---

10 Civ. 7536 (PGG)

**MEMORANDUM
OPINION & ORDER**

---

PAUL G. GARDEPHE, U.S.D.J.:

        This is a Section 1983 action in which pro se Plaintiff Frederick DeLeon alleges

that, while incarcerated at Rockland County Correctional Facility ("RCCF") as a pre-trial

detainee, he was improperly placed in solitary confinement without justification.  The Complaint

also suggests that Plaintiff suffered discriminatory treatment as a result of his religious practices.

        Defendants have moved for summary judgment (Dkt. No. 30), but have not filed

the required Local Rule 56.1 statement.  Local Rule 56.1 requires that a motion for summary

judgment be accompanied by "a separate, short and concise statement . . . of the material facts as

to which the moving party contends there is no genuine issue to be tried."  Local Civil R. 56.1(a).

A moving party's "[f]ailure to submit such a statement may constitute grounds for denial of the

motion," and numerous courts in this district have denied summary judgment motions on this

basis.  See, e.g., AIM Int'l Trading, LLC v. Valcucine S.p.A., No. 02 Civ. 1363 (PKL), 2003 WL

21203503, at *11 (S.D.N.Y. May 22, 2003) (denying summary judgment motion because of

failure to comply with Local Rule 56.1); Stone v. 866 3rd Next Generation Hotel, LLC, No. 00

Civ. 9005 (LTS), 2002 WL 482558, at *1 n.2 (S.D.N.Y. Mar. 29, 2002) (same); Frank v. Plaza

Constr. Corp., 186 F. Supp. 2d 420, 433 (S.D.N.Y. 2002) (same); Misla v. CVS Pharmacy, Inc.,

No. 99 Civ. 9989 (KNF), 2001 WL 637384, *2 (S.D.N.Y. June 8, 2001) (same); Rossi v. New York City Police Dep't, No. 94 Civ. 5113 (JFK), 1998 WL 65999, *4 (S.D.N.Y. Feb. 17, 1998) (same).

        In support of their motion, Defendants have filed a two-page declaration, which merely lists a lengthy collection of prison documents and medical records. Most of the prison documents and medical records are handwritten and difficult to read. Defendants have also submitted an affidavit from Capt. John Liska, a supervisor at RCCF. While Liska claims that he has "personal knowledge" of Plaintiff's incarceration at RCCF (Rosenrauch Decl., Ex. I (Liska Aff.) ¶ 2), he relies for the most part on prison records prepared by others. Furthermore, neither Defendants' briefs nor Liska's affidavit point the Court to the material portions of the handwritten notes. Defendants' failure to file a Local Rule 56.1 statement or any affidavits from witnesses with personal knowledge – such as Plaintiff's doctors, behavioral health representatives, any of the defendants, or other correctional officers who dealt with Plaintiff – has forced the Court to attempt to piece together the relevant facts from a mass of handwritten notes.

        Nevertheless, the Court will exercise its discretion and consider the merits of the motion. See Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001) (noting that a district judge "may in its discretion opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file . . . a [Local Rule 56.1] statement" (quoting Monahan v. New York City Dep't of Corr., 214 F.3d 275, 292 (2d Cir. 2000)). The Court "'will consider the totality of the parties' submissions in identifying disputed material facts, and will construe those disputed facts in plaintiff's favor as is appropriate on summary judgment.'" Tatum v. City of New York, No. 06 Civ. 4290(BSJ), 2009 WL 124881, at *1 (S.D.N.Y. Jan. 20, 2009) (quoting

<u>Allen v. City of New York</u>, No. 02 Civ. 4373(RJH)(DF), 2006 U.S. Dist. LEXIS 95802, at *27 (S.D.N.Y. Sept. 29, 2006)).

For the reasons stated below, Defendants' motion will be granted in part and denied in part.

## <u>BACKGROUND</u>

Plaintiff was a pretrial detainee at RCCF from April 7, 2010 to November 26, 2010, and spent nearly all of that time in solitary confinement.  (Liska Aff. ¶ 3; Rosenrauch Decl., Ex. D (Housing History Report) (Dkt. No. 31-4) at 3).  RCCF records indicate that Plaintiff was in solitary confinement from April 7 to April 10, 2010; from April 14 to June 4, 2010; from June 11 to August 7, 2010; from August 17 to August 29, 2010; and from September 11 to November 26, 2010, for a total of 199 days, or almost seven months.  (Liska Aff. ¶¶ 4-6; Rosenrauch Decl., Ex. D (Housing History Report) (Dkt. No. 31-4) at 3).

Plaintiff is a Muslim and began attending religious services regularly on April 16, 2010, and continued to do so until he was transferred out of RCCF.  (Liska Aff. ¶ 25; Rosenrauch Decl., Ex. F. (Muslim Services Programs Report))

Plaintiff filed his Complaint on October 4, 2010.  (Dkt. No. 1)  The gravamen of the Complaint is that Plaintiff was put in solitary confinement without adequate justification. (Cmplt. §II.D)  Plaintiff also claims that he suffered from discriminatory treatment as a result of his religious practices.  (Cmplt. § V)  Defendants moved for summary judgment on July 17, 2012.  (Dkt. No. 30)  Plaintiff has filed an opposition and Defendants have filed a reply.  (Dkt. Nos. 38, 39).

## DISCUSSION

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which provides "'a method for vindicating federal rights elsewhere conferred,' including under the Constitution." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). In order to state a claim for relief under Section 1983, "[t]he conduct at issue 'must have been committed by a person acting under color of state law' and 'must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" Id. (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)).

Construing the Complaint broadly – as this Court is required to do in light of Plaintiff's pro se status – Plaintiff alleges that his placement in solitary confinement for 199 days deprived him of substantive due process under the Fourteenth Amendment because these conditions amounted to punishment. (Cmplt. § II.D)

## I.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact" and one party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008).

A court deciding a summary judgment motion must "'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (quoting Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001)). However, a "'party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for

summary judgment. . . .[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.'" <u>Hicks v. Baines</u>, 593 F.3d 159, 166 (2d Cir. 2010) (alterations in original) (quoting <u>Fletcher v. Atex, Inc.</u>, 68 F.3d 1451, 1456 (2d Cir. 1995)).

However, this Court is required to "liberally construe pleadings and briefs submitted by <u>pro se</u> litigants . . .  reading such submissions 'to raise the strongest arguments they suggest.'" <u>Bertin v. United States.</u>, 478 F.3d 489, 491 (2d Cir. 2007) (quoting <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994)).

## II.   <u>APPLICABLE LAW</u>

The Fourteenth Amendment provides, in relevant part, that no "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. "Liberty interests protected by the Fourteenth Amendment may arise from two sources – the Due Process Clause itself and the laws of the States." <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983). Under the Due Process Clause, the conditions of pre-trial detention are constitutional unless they amount to punishment of the detainee. <u>See</u> <u>Bell v. Wolfish</u>, 441 U.S. 520, 535-37 (1979); <u>McFadden v. Solfaro</u>, No. 95 Civ. 1148, 1998 WL 199923, at *8 (S.D.N.Y. Apr. 23, 1998). Since "[p]retrial detainees have not been convicted of a crime and thus may not be punished in any manner, . . . courts considering challenges to confinement brought by pretrial detainees must first consider whether the circumstances of the particular confinement render the confinement punitive." <u>Iqbal v. Hasty</u>, 490 F.3d 143, 168 (2d Cir. 2007), <u>reversed on other grounds</u>, <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009); <u>see also</u> <u>McFadden</u>, 1998 WL 199923, at *4 ("A pre-trial detainee is presumed innocent and therefore cannot be punished.").

"Not every disability imposed during pretrial detention amounts to 'punishment'
in the constitutional sense . . . ." <u>Wolfish</u>, 441 U.S. at 537.  For example, "'the transfer of an
inmate to less amenable and more restrictive quarters for nonpunitive reasons' is not a right
protected by the due process clause itself." <u>Covino v. Vermont Dep't of Corr.</u>, 933 F.2d 128,
129 (2d Cir. 1991) (quoting <u>Hewitt</u>, 459 U.S. at 468); <u>see</u> <u>McFadden</u>, 1998 WL 199923, at *8
(finding that assignment of pre-trial detainee to segregated housing based on his security
classification did not violate Due Process Clause); <u>Yant v. Scholack</u>, No. 95 Civ. 9462
(DC)(THK), 1998 WL 157053, at *2 (S.D.N.Y. Apr. 3 1998) (Due Process Clause does not give
pre-trial detainee protectable liberty interest relating to brief administrative confinement while
undergoing intake and classification procedures); <u>Butler v. New York State Corr. Dep't</u>, No. 94
Civ. 5054 (AGS), 1996 WL 438128, at *4-5 (S.D.N.Y. Aug. 2, 1996) (transfer between state
correctional facilities does not amount to punishment in violation of the Due Process Clause).

Whether conditions of pre-trial confinement amount to punishment turns on
whether the complained of restriction is

> imposed for the purpose of punishment or whether it is but an incident of some
> other legitimate governmental purpose. . . . Absent a showing of an expressed
> intent to punish on the part of detention facility officials, that determination
> generally will turn on 'whether an alternative purpose to which [the restriction]
> may rationally be connected is assignable for it, and whether it appears excessive
> in relation to the alternative purpose assigned [to it].' . . . Thus if a particular
> condition or restriction of pretrial detention is reasonably related to a legitimate
> governmental objective, it does not, without more, amount to "punishment."
> Conversely, if a restriction on condition is not reasonably related to a legitimate
> goal – if it is arbitrary or purposeless – a court permissibly may infer that the
> purpose of the governmental action is punishment that may not constitutionally be
> inflicted upon detainees <u>qua</u> detainees. . . .

<u>Wolfish</u>, 441 U.S. at 538-39.  "[I]n the absence of substantial evidence in the record to indicate
that the officials have exaggerated their response to these considerations, courts should ordinarily
defer to [correction officials'] expert judgment in such matters." <u>Id.</u> at 540 (citations omitted)

> In effect, the <u>Wolfish</u> court announced a two part-test: "[F]irst, the court must determine if the condition is specifically imposed for the purposes of punishment or for a legitimate governmental purpose, secondly, if evidence of punishment is lacking, this court must determine if the restriction is 'reasonably related' to a legitimate objective or constitutes an exaggerated response. If a reasonable relationship can be established, punishment is not present and the Due Process clause is not violated."

<u>United States v. Basciano</u>, 369 F. Supp. 2d 344, 350 (E.D.N.Y. 2005) (quoting <u>Boudin v. Thomas</u>, 533 F. Supp. 786, 788-89 (S.D.N.Y. 1982)).

## III.   <u>ANALYSIS</u>

Here, Defendants argue that Plaintiff was placed in solitary confinement for legitimate, non-punitive, and non-discriminatory reasons, including for the safety and well-being of Plaintiff and other inmates, and that Defendants never had any intent to punish him.  (Def. Br. 7; <u>see</u> Liska Aff. ¶¶ 11-25)  Plaintiff argues, however, that Defendants acted "malicious[ly]" in placing and keeping him in solitary confinement.  (Pltf. Opp. 1)  Plaintiff has offered no direct evidence of an intent to punish, however.  The Second Circuit has stated that

> [a]bsent a showing of an expressed intent to punish, the determination whether a condition is imposed for a legitimate purpose or for the purpose of punishment "generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."

<u>Benjamin v. Fraser</u>, 264 F.3d 175, 188 (2d Cir. 2001) (quoting <u>Wolfish</u>, 441 U.S. at 538)).

Even where there has been no showing of an intent to punish, however, "[a]t some point . . . the administrative necessity for involuntary lock-up begins to pale."  <u>Covino</u>, 933 F.2d at 130.  Indeed, in <u>Covino</u>, the Second Circuit commented that a nine-month stay in administrative segregation "'on its face appear[s] to be punishment.'"  <u>Id.</u> (quoting <u>Wolfish</u>, 441 U.S. at 539 n.20)  Here, housing records indicate that Plaintiff was in solitary confinement for almost seven months – nearly the entire time he was held at RCCF.  (Liska Aff. ¶¶ 4-6)  Such a

lengthy period in solitary confinement "smacks of punishment," Covino, 933 F.3d at 130, absent a legitimate "alternative purpose." Wolfish, 441 U.S. at 538;. see Basciano, 369 F. Supp. 2d at 351-53 (holding that indefinite pre-trial detention in solitary confinement amounts to punishment and ordering pre-trial detainee released into general population).

Defendants contend that Plaintiff was placed in solitary confinement because of "[his] failure to take prescribed medications; mental instability; bizarre and psychotic behavior; complaints about his behavior from other inmates and medical issues requiring contact isolation." (Def. Br. 3)  Defendants further contend that Plaintiff was "made aware on all occasions of the reasons he was moved into or kept in the intake unit." (Id.)  Defendants have offered some evidence – which Plaintiff disputes – suggesting that Plaintiff was mentally unstable and that he may have failed to take his medication on certain occasions.  However, Defendants have offered no evidence that Plaintiff was a danger to himself or others, or that long-term solitary confinement is a reasonable response to a pre-trial detainee who shows signs of mental instability.

Defendants attribute Plaintiff's initial stay in solitary confinement from April 7 to April 10, 2010 to him being on a "suicide watch." (Liska Aff. ¶ 4)  Plaintiff was put on a suicide watch based on his behavior during a prior period of incarceration at RCCF in which he displayed suicidal tendencies. (Liska Aff. ¶ 4; Rosenrauch Decl. Ex. H (Pltf. Dep.) 8)  Other than three days in early April, however, Defendants do not argue that Plaintiff was put in solitary confinement because of concerns that he might harm himself.

Plaintiff's next period of solitary confinement was from April 14 to June 4. Defendants argue that this period of solitary confinement was necessary because Plaintiff was not taking his medication and was "psychotic." (Liska Aff. ¶¶ 11-16)  Record evidence

supporting this assertion is spotty and inconsistent.  Contemporaneous prison records –

"Interdisciplinary Review Records" – indicate that while initially Plaintiff may not have been

taking enough medication, as the weeks passed, doctors struggled to find the "right kind" of

medication for Plaintiff.  RCCF records show that:

- on April 26, Plaintiff was "taking very little medication . . . not enough to keep him stable."

- on April 27, doctors "want [Plaintiff] to take [his medication] regularly before moving him back to the housing units"

- on May 12, doctors "changed his meds to the right kind."

- on May 17, Plaintiff was seen by "Dr. Gillati today; still psychotic" and "taking meds – still weird."

- on May 27, Plaintiff was "taking meds . . . he seems to be stable. . . if nothing on the security end is keeping him in Intake, can be moved to a wing."

(See Rosenrauch Decl. Ex. D (Interdisciplinary Review Records) (Dkt. No. 31-4) at 18-23).  On

June 4, Plaintiff was moved into general population.  (Liska Aff. ¶ 16)

        Plaintiff denies that he ever stopped taking his medication.  (See Pltf. Dep. 9-10

("I've always took medication, the same medication for the last nine years."); id. at 40 ("I've

always taken the medication that I've taken since 2004.  I haven't ever stopped taking it.))

        The conflicting evidence as to whether Plaintiff refused to take his medication

creates a disputed material issue of fact that cannot be resolved on a motion for summary

judgment.  See Cumberbatch v. Port Auth. of NY & NJ, No. 03 Civ. 749 (BSJ), 2006 WL

3543670, at *8 (S.D.N.Y. Dec. 5, 2006) ("That the Officers' version of the events is markedly

different [from Plaintiff's] cannot avail them at this stage in the litigation."); see also Weyant v.

Okst, 101 F.3d 845, 855 (2d Cir. 1996) ("[Plaintiff] categorically denied using any obscenities.

. . . Although [Defendants] gave evidence to the contrary, the district court was not entitled, on a

motion for summary judgment, to credit their version of the facts and enter judgment based on its own view that their version was more likely true. The weighing of the evidence and the determination as to which version of the events to accept are matters for the jury.").

Even if this Court were to disregard Plaintiff's denials, however, Defendants have not demonstrated that Plaintiff consistently refused to take his medication in April, May, and June, 2010. Indeed, RCCF records for May 17 and May 27 indicate that Plaintiff was "taking meds." (See Rosenrauch Decl. Ex. D (Interdisciplinary Review Records) (Dkt. No. 31-4) at 22-23). And even if this Court could disregard this evidence, Defendants have not demonstrated that an appropriate response to a mentally unstable pretrial detainee's refusal to take medication is to place that detainee in solitary confinement for a lengthy period of time.

On June 11, Plaintiff was moved back into solitary confinement. Defendants contend that they took this action to protect Plaintiff's safety "after complaints by inmates in [general population] that [Plaintiff] was making sexual advances towards them." (Liska Aff. ¶ 17; Rosenrauch Decl., Ex. D (Interdisciplinary Review Records) (Dkt. No. 31-4) at 28 (noting that Plaintiff was "moved from B-Wing to Intake. Inmates in B-Wing state he is making sexual remarks and invitations to them"); Rosenrauch Decl., Ex. E at 2 (describing other inmates' statements about Plaintiff's alleged sexual advances towards them). Plaintiff denies that he ever made sexual advances towards any other inmates. (See Pltf. Dep. 15 ("I am a heterosexual. . . . It doesn't make sense to have my fiancée come visit me and make moves on guys.")) Again, this Court cannot resolve the factual dispute as to whether Plaintiff ever made sexual advances to other inmates.

On June 14, 2010, Plaintiff asked to be moved into general population. (Rosenrauch Decl. Ex. D (Interdisciplinary Review Records) (Dkt. No. 31-5) at 31) On June 24,

a behavioral health representative met with Plaintiff.  (Id. at 33)  Thereafter, there are no

notations in the Interdisciplinary Review Records until July 8.  A note taken on that day indicates

that Plaintiff had developed an "abscess on his belly" that required treatment with antibiotics.

(Id. at 36)  A July 12 note indicates that the abscess "looks better" and a July 15 note states that

the abscess "seems to be healing."  (Id. at 41)

        On August 7, Plaintiff was moved into general population.  (Liska Aff. ¶ 19)  On

August 17, Plaintiff developed an abscess on his scalp that required hospitalization.  (Liska Aff.

¶ 19)  He was moved into solitary confinement after his discharge from the hospital later that day

(Liska Aff. ¶ 19; Rosenrauch Decl. Ex. D (Interdisciplinary Review Records) (Dkt. No. 31-5) at

45, 47), and he remained in solitary confinement until September 8, when he was moved into

general population.  (Liska Aff. ¶ 6)

        On September 11, Plaintiff was returned to solitary confinement, where he

remained until his transfer out of RCCF on November 26.  (Liska Aff. ¶¶ 6, 20)  Liska concedes

that RCCP "d[id] not keep the records that would indicate the reason" for this final period of

solitary confinement, but states generally that "all moves were made for the safety of the inmate

and for general prison security.  His medical records do indicate that during part of the time, he

was again refusing his medication.  At no time was he being punished by his housing

placement."  (Liska Aff. ¶ 21)

        This Court's review of the handwritten RCCF medical records has disclosed only

one reference to Plaintiff not taking his medication during this period. (See Rosenrauch Decl.,

Ex. G (Plaintiff's Medical Records) at 3 (noting that Plaintiff stated on November 5, 2010 "that

he couldn't think clearly while he was taking medication . . . states that he has stopped his

meds"). While Plaintiff admitted at his deposition that he did not want to take certain

medication, he denied that he had ever stopped taking prescribed medication:

> Q.    And you have no recollection whatsoever of refusing to take your
> medication during any time you were [at RCCF]?
>
> A.    Ma'am, no, ma'am. There were times where I seen a social worker or Dr.
> Galotti and I told him I didn't really feel like taking it. However, I didn't
> lose character. Like I said, I maintained my military bearing. I listened to
> what they said and I was honest. I really didn't want to the take the
> Seroquel.

(Pltf. Dep. 23-24). Given that there are no records documenting the reasons for Plaintiff's stay in

solitary confinement from September 11 to November 26, this Court cannot find, as a matter of

law, that this period of solitary confinement was necessary to protect Plaintiff's safety or to

preserve general prison security and good order.

*   *   *

The evidence before this Court does not establish as a matter of law that Plaintiff

was kept in solitary confinement for 199 days because he was a danger to himself or others, or

because he was a threat to maintaining order at RCCF. There are issues of material fact about

whether Plaintiff consistently refused to take his medication during this 199-day period, and

about whether he was making sexual advances to other inmates. Moreover, Defendants have not

cited any authority demonstrating that solitary confinement is a reasonable response to a pre-trial

detainee with mental problems who refuses to take medication. See United States v. Bout, 860

F. Supp. 2d 303, 308 (S.D.N.Y. 2012) ("[I]t is well documented that long periods of solitary

confinement can have devastating effects on the mental well-being of a detainee.").

As a general matter, inmates are free to refuse medication unless they pose a

danger to themselves or others. See, e.g., Murray v. Melendz, No.03 Civ. 1263 (GTS/RFT),

2011 WL 4595213 at *5 (N.D.N.Y. Sept. 13, 2011) ("In New York, a[n] [inmate] patient's right

12

to refuse medication may be disregarded 'only in narrow circumstances, including those where the patient presents a danger to himself or other members of society or engages in dangerous or potentially destructive conduct within the institution.'" (quoting <u>Kulak v. City of New York</u>, 88 F.3d 63, 74 (2d Cir. 1996)); <u>Rivers v. Katz</u>, 67 N.Y.2d 485, 495 (1986) (noting that an individual's "right to reject treatment with antipsychotic medication . . . may have to yield . . . [w]here the patient presents a danger to himself or other members of society or engages in dangerous or potentially destructive conduct within the institution"). This is true even of patients who are involuntarily committed. <u>See Rivers</u>, 67 N.Y.2d 495 ("We . . . reject any argument that involuntarily committed patients lose their liberty interest in avoiding the unwanted administration of antipsychotic medication."); <u>accord</u> <u>Bee v. Greaves</u>, 744 F.2d 1387, 1394 (10th Cir. 1984) ("[A] pretrial detainee retains a liberty interest derived from the Constitution in avoiding unwanted medication with [anti-psychotic] drugs.").

       Given the material issues of fact discussed above and the absence of evidence justifying Plaintiff's lengthy period in solitary confinement, the Individual Defendants have not demonstrated that they are entitled to summary judgment on Plaintiff's Due Process claim.[1]

## IV.  **PERSONAL INVOLVEMENT**

       Although the Individual Defendants have not argued that there is insufficient evidence of their personal involvement in the conduct at issue in this case, the Court has considered whether Plaintiff can demonstrate that each Individual Defendant was personally

---

[1]  Defendant RCCF is entitled to summary judgment, however, because RCCF is a facility under the aegis of Rockland County and "Rockland County . . . may only be found liable under Section 1983 for [its] <u>policies</u> that cause constitutional torts." <u>Heisler v. Kralik</u>, 981 F. Supp. 830, 840 (S.D.N.Y. 1997) (citing <u>Monell v. Dep't of Social Services of the City of New York</u>, 436 U.S. 658, 691 (1978)). Plaintiff has not offered any evidence tending to support a <u>Monell</u> claim against the County. Accordingly, RCCF is entitled to summary judgment on Plaintiff's Due Process claim.

involved in placing him in solitary confinement.  "In this Circuit, personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." De Michele v. City of New York, 09 Civ. 9334 (PGG), 2012 WL 4354763, at *16 (S.D.N.Y. Sept. 24, 2012) (citations omitted).  "To survive a motion for summary judgment, there must be some evidence of the personal involvement of each defendant in the alleged constitutional deprivation."  Ricks v. O'Hanlon, No. 07 Civ. 9849(WHP), 2010 WL 245550, at *4 (S.D.N.Y. Jan. 19, 2010) (citing Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). "'Personal involvement' is a question of fact, governed by the general rule that summary judgment may be granted only if no issues of material fact exist."  Shankle v. Andreone, No. 06-CV-487 (NG)(LB), 2009 WL 3111761, at *5 (E.D.N.Y. Sept. 25, 2009) (citing Williams, 781 F.2d at 323).

    Plaintiff asserted at his deposition that each of the Individual Defendants was responsible for placing him in solitary confinement without justification.  (See Pltf. Dep. 8 ("I was moved from a wing to intake by Sergeant Witt."); id. at 12 ("Sergeant Gintilla and Lieutenant Scurti pulled me out of B wing [and] said I would be going to intake until further notified."); id. at  33-34 ("[Scurti] moved me to intake from B wing [and he put a] do-not-move tag on me").  The Court concludes that Plaintiff has demonstrated sufficient personal involvement of the Individual Defendants to survive summary judgment.

## V.  **QUALIFIED IMMUNITY**

    The Individual Defendants argue that even if they violated Plaintiff's rights, they are entitled to qualified immunity.  (Def. Br. 7-8)  As a general matter, correctional officers who violate a plaintiff's constitutional rights are nevertheless entitled to qualified immunity if their "conduct does not violate clearly established statutory or constitutional rights of which a

14

reasonable person would have known." <u>Stephenson v. Doe</u>, 332 F.3d 68, 77 (2d Cir. 2003) (citation omitted).

"[A] pre-trial detainee's right to be free from punitive confinement is well established." <u>Smart v. City of New York</u>, No. 08 Civ. 2203 (HB), 2009 WL 862281, at *11 (S.D.N.Y. Apr. 1, 2009) (citing <u>Benjamin</u>, 343 F.3d 49-50; <u>Iqbal</u>, 490 F.3d at 168; and <u>Wolfish</u>, 441 U.S. at 537-38). The Second Circuit has cautioned, however, that "identifying the generalized constitutional protection is not enough; the law must be 'clearly established in a more particularized sense,' . . . that is, 'in . . . the specific context of the case.'" <u>De Michele</u>, 2012 WL 4354763, at *17 (quoting <u>Kerman v. City of New York</u>, 261 F.3d 229, 236 (2d Cir. 2001) and <u>Saucier v. Katz</u>, 533 U.S. 194, 236 (2001)).

Here, when the evidence "is viewed in the light most favorable to plaintiff[] and with all permissible inferences drawn in [his] favor," the Court "cannot say, as a matter of law, that the conduct described by the factual allegations [ – keeping an inmate in solitary confinement for 199 days under the circumstances described above – ] would be reasonably perceived as constitutional." <u>Salahuddin v. Goord</u>, 467 F.3d 263, 273, 277-78 (2d Cir. 2006) (citation omitted). Accordingly, the Individual Defendants' motion for summary judgment on qualified immunity grounds will be denied.[2]

---

[2] The Complaint vaguely alleges that Plaintiff suffered discriminatory treatment as a result of his "religious practices." (<u>See</u> Cmplt. § V (alleging "BIAS[] for religious practices") At his deposition, Plaintiff denied that he was claiming that he was placed in solitary confinement because of his religion. (<u>See</u> Pltf. Dep. 23 ("Q. Do you claim . . . that the fact that you were kept in intake housing for a long period of time had anything to do with your religion or practices? A. No.")) Plaintiff testified, however, that he was not allowed to go to Muslim services for "some time" after he arrived at RCCF, and that he was not allowed to go to religious classes. (Pltf. Dep. 18-19) Plaintiff's statements at his deposition could be construed as a claim under the Free Exercise Clause of the First Amendment. <u>See</u> Ford v. McGinnis, 352 F.3d 582, 587 (2d Cir. 2003) (noting that alleged interference with an inmate's religious practice presents a claim under the Free Exercise Clause). Plaintiff has not addressed this claim in his opposition papers and

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is

GRANTED as to Defendant RCCF and as to any Free Exercise Clause claim.  It is otherwise

DENIED.  The Clerk of the Court is directed to terminate the motion.  (Dkt. No. 30)

The Clerk is further directed to mail a copy of this order to pro se Plaintiff

Frederick DeLeon, 140 Old Orangeburg Road, Bldg. 57, Orangeburg, NY 10962.

Dated: New York, New York          SO ORDERED.
        March 22, 2013

                                   Paul G. Gardephe
                                   United States District Judge

---

therefore has abandoned it.  Even if the claim had not been abandoned, Plaintiff has not offered
any evidence contradicting RCCF's contemporaneously-prepared Muslim Services Programs
Report indicating that Plaintiff began attending religious services on April 16 – six days after he
arrived at RCCF – and that he attended services regularly thereafter.  (See Liska Aff. ¶ 25;
Rosenrauch Decl., Ex. F. (Muslim Services Programs Report))  There is likewise no evidence
that Plaintiff ever asked to attend any particular type of religious class or that he was denied an
opportunity to do so.  Accordingly, to the extent the Complaint and Plaintiff's testimony could
be construed to raise a Free Exercise Clause claim, summary judgment in favor of Defendants is
appropriate.